# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-696V
UNPUBLISHED

| | |
|---|---|
| GINA SINGH, | Chief Special Master Corcoran |
| Petitioner, | Filed: July 14, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*James C. Daughton, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION DISMISSING CASE[1]

On January 12, 2021, Gina Singh filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Table injury – shoulder injury related to vaccine administration ("SIRVA") - as a result of tetanus, diphtheria, and acellular pertussis ("Tdap") vaccine she received on November 1, 2018. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet**. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

As discussed below, Petitioner has not established by preponderant evidence that she can meet the Act's "severity requirement." Therefore, Petitioner is not entitled to damages, and the Petition must be dismissed.

I.    **Relevant Procedural History**

Approximately fifteen months after the claim's activation, Respondent filed a Rule 4(c) Report challenging compensation, and filed the instant Motion to Dismiss. ECF Nos. 16-17. Respondent argues that Petitioner has failed to establish that she suffered the residual effects of her alleged injury for more than six months, and/or that her alleged injury resulted in inpatient hospitalization and surgical intervention. ECF No. 16 at 4.

Thereafter, on September 14, 2023, I issued a scheduling order setting a date for Petitioner to file her Response brief. Petitioner filed a supplemental declaration on November 28, 2023. ECF No. 19. On December 12, 2023, Petitioner filed her Response brief. ECF No. 21. On January 5, 2024, Respondent filed his Reply brief. ECF No. 23. The matter is now ripe for disposition.

II.    **Petitioner's Medical Records**

On November 1, 2018, Petitioner received a Tdap vaccine in her right deltoid at the office of her primary care provider ("PCP"), Squirrel Hill Primary Care in Pittsburgh, PA. Ex. 1 at 1.

On November 9, 2018 (eight days after vaccination), Petitioner returned to her PCP with complaint of right shoulder pain and limited range of motion ("ROM") that began within a "couple of hours" of her vaccination. Ex. 2 at 72. On examination, Petitioner's right bicep had a faint area of redness extending to the inner axillary area, and she had difficulty lifting her right arm due to pain and swelling. *Id.* at 73-74. Petitioner's PCP, Dr. Atalie Lapid, diagnosed Petitioner with cellulitis of the right arm, prescribed the antibiotic Keflex, and advised Petitioner to follow up in a week. *Id.*

Over the ensuing eight-month period (November 10 - July 11, 2019), Petitioner did not seek any medical care or treatment. ECF No. 14. Then, on July 12, 2019, Petitioner went to West Penn Hospital Diagnostic Radiology to undergo x-ray examinations of her right shoulder. Ex. 3 at 46-47. Her primary complaint that day was "chronic right shoulder pain since 11/2018." *Id.* at 46. This x-ray showed moderate acromioclavicular and glenohumeral osteoarthritic changes and osteopenia. *Id.*

On August 23, 2019, Petitioner returned to West Penn Hospital to undergo a right shoulder MRI. *Id.* at 53-54. The MRI revealed mild rotator cuff tendinosis, tears of the

2

supraspinatus and infraspinatus tendons, moderate acromioclavicular and glenohumeral osteoarthrosis, mild subacromial subdeltoid bursitis, and a probable posterior labral tear. Ex. 3 at 54.

The next medical record is from November 19, 2019 (almost three months later), at which time Petitioner returned to see Dr. Lapid. Dr. Lapid diagnosed Petitioner with a nontraumatic complete tear of the right rotator cuff and recommended physical therapy. Ex. 2 at 83. Petitioner reported during this visit that she had been advised to follow up with orthopedics after her MRI but was unable to get an appointment. *Id.* She further indicated that her pain had somewhat improved, but she was still experiencing reduced ROM due to discomfort, and that she was convinced her symptoms were from her November 2018 Tdap vaccination. *Id.*

There are no further medical records filed in this case, and it does not appear Petitioner ever followed up with an orthopedics consult or physical therapy.

### III.   Other Evidence

Petitioner submitted two sworn declarations in support of her claim. Exs. 4, 5. In the first, executed on December 21, 2020, Petitioner recites that she has met the requirements for compensation, namely that she received a Tdap vaccine on November 1, 2018, that she sustained injuries caused by the administration of this vaccine, that she suffered the residual effects of this injury for more than six months, that she has never had a right shoulder injury prior to vaccination, and that she has never received an award or settlement for her alleged vaccine injury. Ex. 4.

Petitioner's second declaration was filed in response to Respondent's Motion to Dismiss, on November 28, 2023. Petitioner indicates that after her vaccination, she scheduled a visit with Dr. Lapid and was prescribed a three-day antibiotic course. Ex. 5 ¶ 2. She contends that it was difficult to schedule appointments with this practice, and that she could not schedule a follow-up until February 2019. *Id.* ¶ 3.

She goes on to note because of her background as a restorative aid and licensed practical nurse, she began passive range of motion exercises at home, which she indicates she started in mid-December 2018. *Id.* ¶ 4. She also used rest, ice, and heat to self-treat her symptoms. *Id.* She states that "for almost a year, my right arm was essentially paralyzed" but that due to her home exercise regimen by July 2019 she "could raise [her] right arm at least halfway without the help of [her] left hand lifting it". *Id.* ¶ 5. She notes, however, that movement of her arm came with pain. *Id.* ¶¶ 5-6.

She further indicates that she returned to Dr. Lapid in July 2019 and "demanded that she order some diagnostic testing." *Id.* ¶ 7. By November 2019, Petitioner indicates that her arm had more mobility but had still not returned to how it was before the Tdap

vaccination, so she returned to Dr. Lapid who referred her to PT. *Id.* ¶ 8. However, Petitioner notes that she felt PT was inapplicable to her case. *Id.*

Finally, Petitioner notes that during all of 2019 and then through the Covid-19 Pandemic, she continued to perform her home exercise program and made sure to continue use of her right arm as much as possible so that she would not lose mobility. *Id.* ¶ 9. She indicates that by January 2021, her right arm had regained flexibility almost to her pre-vaccination status but that it still aches at night and hurts occasionally with movement and lifting, and that she takes Naproxen to manage these symptoms when they arise. *Id.* ¶ 10.

## IV.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events

4

when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. Section 11(c)(1)(A)(B)(D)(E).

time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### V. Finding of Fact and Ruling on Entitlement

Respondent contends that Petitioner cannot demonstrate that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

6

There is no dispute that Petitioner received the Tdap vaccine on November 1, 2018, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through May 1, 2019 (assuming onset of pain the same day as the date of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred on November 9, 2018, when she saw Dr. Lapid and complained of right shoulder pain and reduced range of motion. Although Petitioner diligently pursued medical treatment initially, the remainder of the record is defined by multiple long gaps in treatment. Approximately eight months passed before Petitioner had her next medical appointment on July 12, 2019, during which she received an x-ray of her right shoulder, despite being advised by Dr. Lapid to follow up with her in a week. Over another month passed with no further treatment until August 12, 2019, when Petitioner underwent an MRI of her shoulder. Then approximately three months passed before she returned to Dr. Lapid, who recommended Petitioner see an orthopedist and also participate in physical therapy. Petitioner does not appear to have availed herself of either of these options.

Although Petitioner attempts to fill the gaps with her testimony (as given in her second declaration), those contentions are not corroborated or otherwise reliable enough to the severity of her injury by preponderant evidence. For example, although Petitioner was able to schedule an appointment with Dr. Lapid only eight days after the inciting vaccination, she goes on to note that it became difficult to schedule appointments with this practice. It is difficult to reconcile the purported urgent quality of Petitioner's injury with her willingness to forego treatment for so long (and thus could have found available treaters if in fact her medical issue was so pressing).

Petitioner also recollects that "[d]uring the entirety of 2019 and even through the Covid-19 pandemic, I continuously performed my home exercise program." Ex. 5 ¶ 9. However, the contemporaneous medical record from her November 11, 2019, medical appointment indicates that she reported that "[s]he has not been doing any exercise or stretches." Ex. 2 at 83.

Finally, Petitioner recounts that for "almost a year, my right arm was essentially paralyzed." Ex. 5 ¶ 5. It is difficult to align this comment with the contemporaneous records, which indicate that following her initial medical appointment eight days after

7

vaccination, she did not seek additional treatment for approximately eight months, only sporadically thereafter, and not at all following November 2019. Although Petitioner represents that she had spent this time self-treating her shoulder through a combination of rest, ice, and heat, it would typically be expected that a petitioner would seek additional care if her arm was so bad as to be essentially paralyzed. Indeed, Petitioner has not alleged that her condition caused her to miss any work, or otherwise was a major disruptive force in her daily life

Ultimately, the overall paucity of medical records does not allow me to find Petitioner has met the severity requirement by preponderant evidence, and statements in Petitioner's declaration cannot overcome the deficiencies created by the lack of treatment records. Petitioner needed to establish that on May 1, 2019, she was still suffering from shoulder pain and reduced range of motion. However, that date fell approximately two months before the next time Petitioner sought treatment, when she got an x-ray. Such lengthy treatment gaps are too large to ignore in this case given the facts and the overall lack of treatment sought by Petitioner, and allows for the possibility of other intervening factors as more likely explanatory of Petitioner's subsequent shoulder complaints.

Additionally, upon her November 11, 2019, return to Dr. Lapid, Petitioner was diagnosed with a "nontraumatic complete tear of the right rotator cuff" based on her MRI results. Ex. 2 at 86. However, as I have noted previously, a vaccine would not cause a rotator cuff tear. *Stevens v. Sec'y of Health & Hum. Servs.*, No. 21-2348V, 2025 WL 1638443, at *4 (Fed. Cl. Spec. Mstr. May 1, 2025). This cannot therefore be viewed as a likely SIRVA sequela.

## Conclusion

**Because Petitioner has failed to meet the severity requirement set forth in Section 11(c)(1)(D)(i), Petitioner cannot establish entitlement and therefore I must DISMISS her claim in its entirety. In the absence of a timely-filed motion for review (*see* Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[4]**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.